Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Catherine Zienoff presiding, along with Justice Ann Jorgensen and Justice Mary Shostak. The case is No. 2-19-0374. Invenergy Nelson LLC, Plaintiff Appellant, Mrs. Rock Falls Township High School District No. 301, et al., Defendants Appellees. Arguing for the Appellant, Ms. Emily L. Peel. Arguing for the Appellee, Rock Falls Township High School District No. 301, Mr. Stephen M. Richard. Good morning. This is Justice Zienoff speaking. Counsel, thank you very much for being available this morning to proceed with your oral argument remotely. This is something new for all of us. Before we begin, a word or two about our format this morning. Just as if you were in the courthouse in Elgin, you will each have up to 15 minutes for your arguments. The Appellant will also have up to five minutes for rebuttal. You've heard Mr. Kaplan let you know that there will be a buzzer indicating when your time is up. I also will let you know you certainly don't have to use all of the time allotted. I would like to remind you, as is the practice of the Second Appellate District, we have all read your briefs ahead of time. What will be different this morning is that we will not interrupt your argument with our questions as we usually do. We felt that since this is being done remotely, it would be too difficult to proceed in that manner. So we will save our questions for each of you until you have completed your arguments. That is, after the Appellant completes argument, then we will ask her questions. And when the Appellee finishes his argument, we will ask him the questions. I would like to remind you that no one except the Clerk is permitted to record this proceeding today. And Ms. Peel, you indicated your Associate is also on the line but is muted. Is that correct? Yes, that is correct. All right. And what is her name or his name? Her name is Holly Campbell. Okay. Thank you. Do either of you, Counsel, have any questions before we officially begin? All right. Hearing none, then, Ms. Peel, would you like to begin your argument, please? Yes, Your Honor. Thank you. May it please the Court. Good morning, Your Honors. Good morning, Counselors. My name is Emily Peel, and I represent Plaintiff Appellant in Benergy-Nelson, LLC, and move in on the motion to strike. The trial court here got it wrong when it misinterpreted the property tax code and the resolution at issue and as well made improper finding of fact when it dismissed Benergy's complaint and denied its motion to reconsider. Here below and here the District Court has argued for and the Court below found that there were additional and different pleading requirements as well as proofs well beyond what is required to state a claim for a tax objection and a declaratory judgment. That was simply not proper to do when ruling out a motion for 2615 to dismiss. As the trial court said in Anderson, Ingrid Anderson, a tax objection names the county collector as a defendant and specifies the objection to the taxes. That case specifically goes on to say that the why does not have to be included in the tax objection claim. The why is the proof of the objection, and a petition is not insufficient for failing to allege the why. But even here, we did allege the why. We've alleged that the resolution applied to in Benergy. We've alleged how we're entitled to it and how it runs with the land. We've alleged why the district's actions attempting to rescind the 2000 resolution were improper. And throughout, both in the trial court and here, the district has not cited to any definitive legal authority that Benergy did not state what required to state a claim or that Benergy is not entitled to the abatement relief provided in the 2000 resolution. Instead, they go to extreme lengths to argue how we needed to allege how the code applied, how we needed to allege how the assessment was to be done, how we needed to allege some sort of further action. But it's simply not required to state a claim. That may be their defenses to the claim, but that's not what's required to allege a claim and sustain it. And so we believe the trial court got it wrong when it dismissed the complaint. Some of the specific things that the trial court got wrong was finding that the abatement shall not exceed a period of 10 years and that Benergy seeks to resolve the 2000 resolution through 16 years after its effective date. That's an improper reading of the code itself. The code provides that abatement shall not exceed a period of 10 years. And the abatement at issue here in the 2000 resolution is simply for five years. The court improperly found an effective date of 2000, which is contrary to the plain language in the resolution, which provides that the abatement will begin after the first full year of operation of the power generation facility. The district even admitted, actually, in its brief on page 22, that the legislative intent was for the 10-year period to begin when the taxing body orders the clerk to abate. And that's what never happened here, was the district never ordered the clerk to abate. As we've argued in our brief, and you've probably seen in Benergy's bill, that they went to the district after they completed. Can you hear me? Yes, but I'm going to ask that you slow down a little bit. We're all doing this remotely, and we can't see you either, obviously, since we don't have video. So I think if you slow down just a little bit, it would be easier to follow your argument. So if you'd be kind enough to do that. Thank you. Sure. Yes, I understand. It's a different model than we're all used to. Right. Okay. Thanks. Go ahead. Well, here, the resolution itself states that the abatement starts with taxes beginning in the real estate taxes for the first year after operation, which clearly contemplates a future start date. So for the trial court to rule that the start date had to be when the resolution was granted was clearly contrary to the resolution itself. And we've exhausted that issue in our brief below and addressed it again in our brief here, so I won't focus too much on it, because I think we've explained it quite well, that the legislative intent of this was for future relief. If you build it, later on we will abate it. So it wasn't intended that the abatement, the passing of the resolution triggers the abatement, rather the abatement is triggered when the district is to order the clerk to abate the taxes. Another issue that the court got wrong with finding that in the original quarter that it answered was that it found an additive term, so reasonableness required time for construction to be completed, and there's no reasonableness in the statute, there's no reasonableness in the resolution, and simply finding that then that wasn't reasonable was an improper finding of fact at the trial court level that should not have been ruled on on a 2-615 motion. Additionally, the trial court decided that, quote, that the resolution provides the assessed valuation of the property as determined by the district would be the triggering event, but there's no way to determine the assessed valuation of the project. That's an improper understanding of the code as well, the tax code. First of all, the court erred in finding that the district had to assess the value of the property. The district is not the mechanism for assessing property in any given county. That would be up to the county assessor. Second, the fact that they found that there's no way to assess value is improper. The resolution itself clearly outlines how it works. First, the resolution provided the base year identified in the resolution from the 1999 taxes. It said specifically that after determination of the assessed valuation of the property, the order of the clerk to abate. Well, the logical interpretation of that is this is a math problem. You have to have a base number. You have to have a comparable number, which we already have done after the property was completed, which is evidenced by our tax bills that were paid and attached to the complaint, which show also a substantial increase in the actual tax bill from $14,000 in 1999 to $1.2 million in 2016. In addition to that, as I'll go back to this again, there's no requirement to make an alleging a tax objection claim for us to allege how the assessment would work or the amount to be assessed. In any event, clearly the property was assessed. We paid the tax bill and the proof of which is attached to the complaint. The other issue is that the trial court found a 16-year gap between the assessed value, but there's no restrictions in the code on the time between when the resolution to abate is passed by the district and when the abatement begins. So the fact that the code put in a time restriction on that, both beyond the 5-year, 10-year issue that I've addressed already, but put that into the time period for the assessment is just improper because there isn't any such time restriction for the assessment in the code itself or in the resolution itself. Another misinterpretation of the code by the court below was that it found that for the abatement to be effective to Invenergy, that it had to be located in the state of Illinois in the immediately preceding year. But that's a limited view of the code. That's taking a snippet of it and saying that you had to apply this one. The code has a number of ors in it. What the property code section at issue says is that the property of a commercial or industrial firm located within the taxing district in the immediately preceding year, which is the section that the court solely focused on. But then it says or having been newly created in the state of Illinois or expanding an existing facility. And under C, it says expanding an existing facility or its number of appointments. All of those would qualify under the code for an abatement. As an overarching matter, I want to point out the resolution itself found that this project qualified for an abatement. So that's what we've seen in the body of the resolution itself. It says that. Excuse me. Sorry. The district found in the resolution that the contemplated Howard facility project met the requirements of the code. And it says it out by saying that it qualifies by expanding an existing facility. The Toys R Us case for the Edelman, which actually the district cited, supports that theory that building a new facility in the district qualifies it for a tax abatement. So the court took a very limited view when it only looked at the language of immediately preceding calendar year and did not look at how it could comply under the rest of the statute under the expanding facility and how the resolution itself specifically says that it was an expansion of a facility. Furthermore, we argued below and we put it in a brief, again, that the court found that the resolution was to an entity that was not in energy. We've alleged that this actual resolution runs with the land. The district did not say that any definitive authority to sit contemplate or find that this does not run with it, but the resolution issue does not run with the land. Contrary to that. The case was like Bank of America versus cannibal. Found that a tax reimbursement. Maybe covenant that can run with the land. So we've alleged that it runs with the land. It's. Specifically also that. The resolution does apply to a specific development. Other specific property identified by a legal description. And then filed with the county court. Which supports the notion that this is to be for the property. The district has countered this with some other arguments concerning tax exempt status. You can't rely on a tax credit status, but what they've actually done with that is focus on the fact that. It's the use of the land. That is the issue, not. Who owns the land, which is what we. And this is why this runs with the land. Finally, briefly, I mean, this is all in the brief, so I don't want to go over too much. The court improperly found that we presented no facts that the district didn't stop from denying the validity of the 2000 abatement yet. We've alleged. We've alleged. Significantly that. The district can do the commercial development by. Clearly providing a tax abatement on the property. That the district had option to rescind the 27 resolution after the project was completed and energy qualified for the abatement. The district without authority. Unilaterally, we both the resolution.  Has already provided a reasonable, reasonable explanation for the energy to pay substantially higher taxes. That this was a targeted elimination of benefits. Conferred to him energy. After significant time, money. To complete the project. The district failed to give notice of the meeting and the agenda demonstrating the past 2017 resolution. I'm sorry. Excuse me. And the district passed the resolution only after. Met the requirements of the resolution and approached. The district to apply the abatement. Thank you. Any questions. Justice. My question is about the resolution running with the land. Is it your position that you just simply have to allege that it does. And the proof comes later. We've alleged that it runs with the land. And that. In that fact that it was also filed with the county clerk. It would rise to the inference that if something's filed with the clerk, that this specific one is granted to a. You know, a land that is. Okay. Well, we've alleged paragraph eight, that the it runs with the land by virtue of its unambiguous terms, because it centers on a subject subject property. And specifically the valuation of physical improvements there on. Rather than a party or business or developers. Nothing there in, in the resolution itself. I mean, I don't think there's any reason to restrict it to LSP Nelson as opposed to it. With having the ability to run with the land. And I think. Okay. How would you balance that against the presumption in favor of taxation? That. If the resolution is not specific in granting it. Runs with the land. Does the presumption in favor of taxation. Trump. I don't want to say the presumption in favor of taxation Trump, but I would say for purposes of alleging a claim. A viable claim to that could move on beyond the two, six, one, five stage. I think what we've alleged goes to that part. The proofs of whether or not the. Okay. That was the extent of my questions. Thank you. Okay. Justice. Justice. I'm sorry, I'm talking on mute. I'm sorry.     I'm sorry. I'm sorry. I'm sorry. I'm sorry. Right.  So, the Hannon ball and Cannon ball didn't the agreement specifically say that the covenant ran with the land. You did that. There were contracts in the case that had the covenants running with the land, but I don't think it's beyond the consideration that tax. You know, that certain tax reimbursements and lien rights. But there's any lien write that maybe that parties may have not In this case, there's no language in the 2000 resolution saying that it ran with the landers that intended to run with the land is there and doesn't have to. There's no language in there that says it runs with the land, but I would present that it doesn't have to have language in there that runs the land. And it had does have language in there that we've said that it's focused more on the subject property and the improvements there on than any particular business or party or developer. If the point of the statute is to induce development and to bring in additional taxes to, you know, ease the tax burden. Otherwise, then I don't know if it should be an issue if for the development of the land, whether it's one developer or another. So, that's the intent that you feel we should read into the language into the agreement. Is that what you're saying? In part. Yes. I think one for pleading standard of where we've alleged it, I think we've sufficiently alleged the basis for which we believe it runs with the land. I think that makes additional discovery because whether, you know, covenants that run with the rounds has a fact intensive discovery on, you know, whether the grantees mentor intended the covenant to run with the land, whether the covenant touches and concerns the land and the privity of a state. But all of that, it all affects the use and the value and the enjoyment of the property. Which is a question of fact, but I think that's for the next that, you know, into the next stage beyond, you know, beyond the pleading stage. I believe we've alleged sufficiently that it runs the land. And I think more importantly, the district has not voted any case law that vicinity says that it cannot or does not run with the land. Okay. Okay. So you're, you're indicating that the, the court was incorrect in finding that the 10 years began to run, run at a certain time. It's your position that the, it's at the time the abatement is approved. It's when it's. So the court found that when the abatement, when the resolution passed was the right quote unquote effective date of the resolution. Therefore the 10 years, the maximum 10 year clock started running on that date, but that's an improper understanding of the statute. I mean, obviously the abatement here at issue was only five years. It wasn't, you know, beyond the 10 years of a maximum is only for five years, but the abatement never started. And the resolution clearly says that the abatement starts with the taxing beginning with the real estate taxes for the first full year of operation, which clearly contemplated a future date. And the lead kind of collector actually, or arguments he agreed. And he said the clock starts ticking whenever the district in the business determines. And here that clock started ticking. I set out in the resolution is after the first full year of operation, there wasn't any restrictions built in as to when the construction had to be completed, when the abatement had to start. So your argument is that the trial court found that the resolution or that, that it began to run prior to the property even being completed. Okay. As opposed to the first full year of the operation. Yeah. So the trial court ruling was such that we were 16 years too late when in reality we applied for the, we requested that the county abates or the district abate the taxes. The first year, the property was eligible to pursuant to complying with the terms of the resolution itself. And so have the resolution been for hypothetically had this resolution been for 10 years instead of five, you know, we still wouldn't be beyond it. It instead, legislative intent with this is if you come and build something, expand a facility right here, once you're done, we will abate your taxes for a certain amount of time pursuant to these terms and conditions in this equation. And the trial court, we believe got it wrong when they interpreted the code of saying that you had to start the abatement when the resolution was passed, because when the resolution was passed, even in 2000, in 2001, we went to qualify for an abatement because the property hadn't been completed and operational for a year. So it necessarily contemplates a future date for starting. All right. You're you, you brought up a stock. Your opponent talks about jurisdiction as well. Wouldn't it, wouldn't the tax as alleged in your complaint, those are incorrect or illegal taxes. They're not unauthorized. So what you have to proceed administratively first. No, I think that's a misunderstanding of what it is. So our tax, obviously taxing our interiors, our tax objection complaint was for the 2016 count one was for 2016 taxes payable in 2017. So a tax objection complaint cannot become right until you pay the taxes. You know, paid under protest, you pay the taxes, you file a tax objection complaint. We're not challenging the assessment of taxes, the assessor's office where you might do, if you were challenging the actual assess like your underlying assessment that led to the equalizer, that gets tied to an equalizer and create your tax bill. That might be, that might be something that the property tax appeal board reviews, but this is actually an actual tax bill that doesn't get objected there. It's through the courts to a tax objection that you address a tax objection. And since you can't address the tax objection until you paid the actual taxes, you'd have no remedy for the future years of the resolution until they were paid, which would be a waste of money. That's why the declaratory judgment actually, because we didn't have an adequate remedy at law when the 27th, when the case was filed, because the remaining taxes were not doing payable. Did you, did you attach the 2017 resolution to your complaint? You did not. Do you think the court notice of that? We did attach the 2017 resolution to the complaint. You did. Oh, okay. Okay. Yeah. It's attached to the D to the complaint. Okay. I don't have any questions that other questions at this time. This is just this thing off. I do. Do you have any, or have you found any legal precedent in which a tax objection complaint was used to challenge an abatement decision? He's a challenge and abatement decision. I mean, because, I mean, obviously Henry Anderson is a tax objection complaint we've cited and toys  and rust. There's an element case is where they brought an action, challenging the validity of a resolution that repealed an earlier real estate tax abatement. And in that case, they found that the center like we have here, and which is expressly said in the resolution here, that an expansion of a set of a facility and building a new facility in a County qualifies under the code. So they did actually, they reversed and remanded the case when they thought, when they got initially dismissed and the complaint there was to repeal an earlier resolution. Okay. How can this quarter, a trial court take judicial notice of the 2007 resolution as it is not general and a generally known fact, not capable of accepted or ready determination. In fact, it's a policy and that was not presented to the trial court. Was it? Correct? No, that is what we argued in our reply brief after the district attached it to their emotion and what we argued in our motion to strike. That was never, it's clearly not part of the record and it was not presented to the court below. And we have no indication that the court below took judicial notice of the 2007 policy. Well, could it have, and can we, well, we have no indication if the trial court did or not. There was no discussion there of it taking judicial notice of it. It was raised initially in the motion to dismiss and argued the purpose and substance of the purpose and, you know, certain substance of that policy was argued at the motion to dismiss hearing below. But we have no indication that the court ever saw the document. Now we've obviously document is clearly not part of the record here and we have no indication of it, but if the court isn't, you know, the court could be inclined to take judicial notice of it if they could determine that this was, you know, generally known within the jurisdiction or capable of accurate and ready determination. I'd argue that the district makes no arguments as to how the 2007 policy is a fact generally known as capable of accurate and ready determination. But even if the court were to take judicial notice of it, the district actually already agreed that it's a policy that was when created was from going forward resolution. And the actual document itself that they attached to their response was silent as to anything concerning the 2000 resolution or any other resolution that predates that policy. There's just nothing in that policy where the district ever argued or provided any proof that any prior resolution to that policy was declared or determined null and void. And I don't think that the determination that the policy specifically revokes it. I don't think we can make a determination based on what they presented. If the court's going to take judicial notice of it, that it specifically revokes the 2000 resolution because it's silent as to that. Okay. Thank you. Justice Jorgensen and Justice Shostek, do you have any further questions? Nothing else. Thank you. Nothing. Thank you. Okay. You'll have time on rebuttal. Ms. Peel. Mr. Richard, do you want to start your argument please? Yes. Thank you. And may it please the court. I'm Steve Richard for the board of education of Rock Falls Township High School. And I would like to make a brief comment on this case. This case in the high school. Approach is about a company that tried to purchase an abatement. Without ever confirming. With the school board that it was available for purchase. It is about a company that delayed claiming the abatement for 16 years. And it is about a school board that reasonably declined. An abatement where no written agreement was in place. 16 years had passed. No application was made under the board's then current policy. And the abatement was being claimed by a stranger to the board's original resolution. Your honors, the trial court in this case correctly dismissed the plaintiff's complaint because the complaint did not state a legally cognizable cause of action. The complaint did not plead facts stating entitlement to an abatement. The plaintiff needs a valid theory of recovery here, but has none and rather has pled itself out of court. Let's review briefly the plaintiff's relevant allegations concerning entitlement to an abatement. The complaint alleges that a separate company and previous owner of the property, LSP, Nelson applied to the school board for the abatement in 2000. The complaint attaches the school board's 2000 resolution. The complaint alleges that the plaintiff bought LSP Nelson's assets in bankruptcy in 2004. And the plaintiff alleges in conclusory form that Invenergy first satisfied the conditions for abatement under the 2000 resolution in 2016. Now plaintiff's claim to an entitlement to an abatement based on those allegations has a lot of holes in it. The school board's position is that the complaint is subject to dismissal for at least four separate and independent reasons. And if any one of these grounds is successful, it requires affirmance. Moreover, the plaintiff has chosen not to amend its complaint and has stood on a defective complaint. So granting leave to amend would not be proper at this point. Our four major arguments set forth in our brief are that the complaint first demonstrates that there were unfulfilled conditions in the 2000 resolution and the property tax code in regards to this claimed abatement. Second, that the 2000 resolution occurred more than 10 years ago and the property tax code limits abatements to a 10 year period. Third, Invenergy is an outside party and a stranger to the 2000 resolution. And fourth, the allegations simply do not show that the board abused its discretion or that the courts should interfere in this matter, but show just the opposite. Turning first to argument one and the unfulfilled conditions in the property tax code and the 2000 resolution, let me be clear that the 2000 resolution is not an order to abate taxes. The 2000 resolution merely was a statement of the school board's intent to order abatement of taxes for LSP Nelson upon fulfillment of certain conditions. Section 18-165 of the property tax code unambiguously requires an order to abate. In reply, the plaintiff now admits that the 2000 resolution is not an order to abate. Therefore, there can be no entitlement to abatement under section 18-165 of the property tax code. In this case, plaintiff states no theory of how or why the 2000 resolution is binding here or conveys any interest or entitlement under the resolution's terms. Plaintiff treats the 2000 resolution as some sort of option to abate, but there's no support in the property tax code that such a thing exists. Further, section 18-165 requires the abatement to be to a firm that expands the facility or a firm that locates within the district during the immediately proceeding calendar year. These conditions are not alleged to be present. Even further, section 18-165 requires a determination by the district of its assessed valuation prior to the abatement, also not alleged to be present and not in the 2000 resolution. Going yet further, the 2000 resolution on its face is not self-executing and requires further district orders to the county clerk, which are not alleged to have been requested by Invernergy. The plaintiff's complaint brushes aside the conditions in the 2000 resolution and turns a deaf ear to the statute's conditions. While the plaintiff shrugs off the statute,  and the plaintiff in reply admits none is present. The theory of relief here is based exclusively on a one-sided statement signed by one party and not the other. A one-party resolution that was not a promise, but a statement of intent to abate. A resolution that has no force of law like a policy, and by its timing, it couldn't be in order to abate. Under section 18-165, there's an order of operations. First, the preconditions and the development must occur by the owner in terms of locating within the taxing district or expanding the existing facility. Then the taxing body determines its assessed value. And then, and only then the taxing body votes and orders the clerk to abate. That is not what happened in this case, but instead the board adopted a statement of intent to abate, to induce the development. And because a one-party resolution like this is not enforceable in advance of the development, developers frequently do ask for written agreements. That is not alleged to have taken place in this case. An abatement agreement would be a two-party understanding that the board would, upon certain conditions, order abatement. The complaint does not allege an abatement agreement in this case. So the 2000 resolution is neither an abatement nor an order of abatement. It is instead a statement of intent and it is non-enforceable. Now, our 10-year argument under the property tax code really is just assuming arguendo that the 2000 resolution could be considered as sufficient to trigger abatement relief. And if it could be considered as sufficient, then it must also trigger the 10-year wendo under 18-165. The 10 years should be counted from the abatement order. Otherwise abatements could tie the hands of future boards. In Grassini versus DuPage Township, the court stated it is contrary to the effective administration of political subdivision to allow elected officials to tie the hands of their successors. The plaintiff's interpretation would allow abatement resolutions to lie dormant for 15, 25, 50, perhaps a hundred years before being claimed by the owner. And in the meantime, the delay in development is harmful to the taxing body, which misses out on several years of taxes. There's no support in the statute for a board being bound by a resolution adopted 16 years earlier concerning an abatement. And now on to our third separate and independent reason why the complaint may be dismissed. And that is that Invenergy is an outside party and a stranger to the 2000 resolution. Section 18-165 allows abatement for property of a commercial or industrial firm. And this language imposes an ownership requirement in addition to a use requirement. Section 18-165 does not allow abatement of any commercial or industrial property. Rather, it is property of a commercial or industrial firm. And it is the firm that meets the certain conditions, such as expanding the facility or locating within the district during the immediately preceding calendar year. Now a new owner would require a different determination by a taxing district, whether they are expanding a facility or locating within the district during the immediately preceding calendar year. Thus, an abatement generally cannot be enforced by a foreigner to the abatement or an outsider to the abatement. Invenergy is not alleged in this case to have applied for relief directly to the school board or asked for these appropriate findings. So the fact that the abatement was offered to LSP Nelson and not Invenergy is a separate and independent reason for dismissal of the complaint. I'd like to speak to the plaintiff's running with the land theory for a moment. And that theory appears to be based on the 2000 resolution itself. There are no further allegations in the complaint that go to this issue. And the 2000 resolution, as Justice noted, during the plaintiff's oral argument is that it doesn't state, it doesn't state at all that it runs with the land. And in fact, our position is an abatement can't run with the land under section 18-165 where that section requires fulfillment of conditions by the owner. However, even if it could, the complaint states no facts concerning the running with the land theory outside of the resolution itself and the construction of the resolution is a matter of law for this court to decide. Now, again, the resolution doesn't say it runs with the land and it's not even filed for use attached to the complaint to give notice to property owners or title companies. Instead, it's just filed with the County clerk. The plaintiff's theory is essentially that it runs with the land because it describes the property and it's filed with the County clerk, but that is clearly insufficient. And that would apply in fact, to any abatement. No cases have ever held that an abatement could run with the land. And the only case plaintiff relies on Bank of America versus Cannonball LLC did not involve an abatement, but it involved a written agreement. Again, an agreement, which we don't even have in this case, where parties specifically contracted that a tax obligation of a private party would run with the land. Invenergy claims this is a factual issue, but it is not. There are no factual allegations in the complaint concerning this theory outside of the resolution. And the plaintiff could have added such allegations as the trial court offered leave to amend, but instead the plaintiff chose to stand on the complaint. Bottom line is that a new order or owner isn't automatically entitled to abatement. And this is a separate reason to dismiss the complaint. And finally, our fourth dispositive issue is that the allegations do not show that the school board abused its discretion. Assuming the school board has the authority to grant abatement to Invenergy at this time, abatements are legislative decisions, and the courts are reluctant to interfere. The cases have noted that taxes can be retroactively changed and Invenergy's relief may simply be through the political process. Even if the court wished to pass on whether the school board's action was arbitrary, the allegations show the board's action was within its sound judgment. The allegations are that in 2000, the board resolved to grant an abatement to a previous owner. There's no facts stating that the district induced Invenergy to rely on that resolution at all. The reliance was not induced by the district and nor was it reasonable under the certain circumstances of this case. Thus, this is a fourth dispositive reason to dismiss the complaint. At this time, I'd like to open this to questions. Thank you. Justice Jorgenson? Yes. Well, counsel seems to argue that all plaintiff really has to establish 2615 analysis is just to simply say it runs with the lamp and then the proof would come out later. How do you respond to that? We respond that the only allegation in the complaint concerning the intent of the parties is the resolution itself. And the fact that it's just used turns around the subject property. The construction of the resolution is a matter of law. And in any event, our position is that an abatement can't run with the land. And there's a big difference between an obligation of a private party running with the land versus an obligation, allegedly of a public body running with the land and backing up. We don't even view the resolution as effectively providing or conveying an interest. So your position would be that, excuse me, without some specific language or a specific wording that this would be available to any signs or errors, et cetera, of LSP that it simply ended when LSP walked away. That is our position. Okay. That was my question. I have nothing further. Justice Shastak? Justice Shastak? I am so sorry. I'm walking away again. I'll mute. It's okay. It's hard to remember. Right. There was an argument made by the appellant that of course, that this property runs with the land. And I asked her what, how we infer or read any intent into that and her, her statement, basically, I think I'm repeating this correctly is that this was, this is what you do in order to entice big companies to come in. How is, how is this company in Better Jean Nelson any different than the bankrupt company with respect to enticing? It's, it's actually the same type of business. So how is it any different what they offered them to what they're offering here? Isn't it consistent? Well, there's been an intervening passage of 16 years during which, presumably the school board could have been receiving. It's 16 years, but isn't it supposed to be a year after the property is completed? Not to exceed 10 years. But the decision whether to order abatement after the property is completed and the decision, whether conditions are satisfied, would that not be, that would be in our position of legislative decision. The school boards may grant an abatement. Okay. I mean, aside from the energy, the conclusory allegation that they've satisfied the conditions for abatement, there's nothing else that would suggest that that's the case. So can, can the court take judicial notice of that 2007 resolution? Well, there is no 2007 resolution. There's a 2007 board policy. And board policies are, have the status of law. And there's a case law that we cited on that. And yes. So as a result of that, the court can take judicial notice of the school board policy, but it need not because the relevant information concerning the school board policy is attached to the complaint. That's all located within the 2017 resolution. Now did the board, did the board in that resolution or whatever include language in that 2007 policy that previous resolutions were repealed and needed to be reapplied for in conformance with the policy? Was there any language like that in there? No, there is not. But they put it in there had they wanted to? Had the school board, could that language have been in the 2007 policy of the school board? I suppose that that is possible, but the 2000 action itself was not an abatement order. It didn't need to be overwritten. It's intended beneficiary had gone bankrupt. Yeah. Well, okay. What is your position on the 10 years then? Because I wondering you have a position she has in the position. I think the trial court had even a different position. I appreciate that. The 10 year argument is an alternative argument. I mean, to the extent that the 2000 resolution was construed by the court as sufficient to trigger abatement relief or could be considered an order of abatement, then it must also trigger the 10 year window under 18, one 65. And that's our position. So as it turns out, the parties, as I understand it don't particularly differ on this issue. Yeah. Well, I think the trial court had had determined that he was dismissing the complaint on the basis that the board contemplated that the tax abatement would be provided within a reasonable period of time after the 2000 resolution was passed. Where did it say reasonableness in that resolution? The concept of reasonableness comes from contract law that an offer borrowing from contract law and offer is only valid if accepted within a reasonable time. In this case, in energy is attempting to accept an offer to a different party. That was made 16 years prior under Grassini, the Grassini case. It's contrary to public policy to, for a board to bind a future board for an unreasonable period. And here you would have an unreasonable period on a decision that has impacted the welfare of the subdivision. Okay. I think on the estoppel argument, you indicated that the plaintiff, the plaintiff's reliance on the 2000 resolution in purchasing that property wasn't set out in the complaint. How was this not alleged in the complaint? Wasn't it clearly set out? The plaintiff's reliance was, but not based on anything that the district did. There's no allegation that the district committed any act that Invenergy relied on that caused Invenergy to rely on this resolution. In other words, Invenergy, there's no allegation that Invenergy communicated with the district, inquiring whether the resolution was still there. Or attempting to confirm it or in any, in any such sense, I would argue that's one big problem with the reliance argument. And the second big problem is that it simply wouldn't have been reasonable to rely on a one party resolution. And again, this is why developers frequently get agreements to abate, two party agreements that spell out the obligations of the parties. Now you indicated also that declaratory relief wasn't available under tax cases, but in this case, they couldn't file a tax objection yet for the 2017, 2020 taxes, correct? That's correct. It would have required a separate tax objection to be raised and filed the following year. And then another tax objection to be filed the following year and so forth and so on. But I don't really get the argument that that was, that that was not available or that that was somehow not adequate. Okay. Those are all the questions I have at this time. Thank you, sir. This is Justice Enoff. I do not have any further questions other than those that have been asked already. So Ms. Peel, do you want to give us your rebuttal argument, please? Yes. Thank you, Your Honor. What you're hearing from Congress for the district is a lot of what they've alleged in briefs below, adding additional requirements to state a claim. To state a claim for a tax objection, you have to just name the county collector and specify the objections. To state a declaratory judgment, you have to, you know, say that you have an interest, they have an opposing interest, and there's a dispute over those interests. They are adding additional things that they claim must be alleged to state a proper and beyond, beyond what is required. Besides that, like we said in our briefs, we have alleged enough to sustain a claim. First of all, in response to counsel's comment that we did not, that we did not amend our complaint, the basis for not amending was because the trial court orders were based on an erroneous understanding and application of the statute that you couldn't, if he's already decided how the statute is going to work in his mind, it's not going to be a cleaning issue at that point. Same with the reasonableness, if he already inserted a reasonableness requirement and then found that it wasn't unreasonable, alleging a reasonableness is not going to change it. We also say the same with other provisions of his orders, which clearly misinterpret the property tax code. It's not something that's been alleged around. As for counsel's argument about unfulfilled conditions, which seems to be a new argument now that this is the resolution is not an order. That's not what the argument was in the brief. It's not what the argument was below. The whole process is you find you, you, the resolution starts, you can't, you comply with the resolution and you, the property is assessed and then the district ordered it to be abated with the taxing officials. The unfulfilled condition you're talking about, I'm not sure where this new, we admit abatement was never ordered because they went in when we complied with the resolution and told the district we comply with the resolution. They went and hastily passed a new resolution trying to rescind our old resolution. That goes into their argument that they shouldn't be, we shouldn't have, I mean, these are our opinions. There's no law support cited to support any of these opinions of the district that they shouldn't have to enforce a dormant resolution. And they come up with a hypothetical contract argument. Well, they're admitting that this resolution is still valid by virtue of the 2017 resolution, where they had a hastily rescinded after, you know, targeting, after Invenergy clearly complied with it, then they could have prevented this if they had a contract. There's no requirement in the resolution or in the tax code that we have to run this resolution to abate this enticement. We can, we relied on, we arguably relied on the new passing of this resolution is what we relied on to build the property, which is a key in the estoppel. This is what we relied on. But the new passing of this is not an offer or not actually any sort of a condition to actually abate further. It kind of flies in the face of the entire purpose of the resolution in the first place. If you're going to put a resolution out there saying, if you build this on this property, we will abate your taxes. And then you do that and they say, Oh, nevermind. We didn't mean it. And then what's the point of the resolution? It's not that this is an order to abate. The process of the statute itself is that you comply with the resolution, the property is assessed. And then after determination of the assessed value, the district orders the clerk to abate. As for council's discussion regarding runs with the land, we discussed this previously, but we did make such, you know, allegations in the complaint about how this resolution runs with the land. Council makes the point that there's no case law saying that a resolution can run with the land, but council also has not presented any case law that says a resolution cannot run with the land. On top of that, they create the fictional emphasis on the word and the code on the word of, to me, it has to be probably of LSP Nelson, but that's just their interpretation. There's no support for that argument. You can change the focus of that to be on property, which means the land or any commercial or industrial firm. So it does apply to any commercial or industrial firm. What we alleged here is that by virtue of purchase of property, by virtue of the defined term of the subject property, by virtue of trying to build development on that specific property, that it runs with the land and whether or not it does is a factual question that goes beyond a two, six and five motion. Finally, as we've discussed this a number of times in our brief, the board is that there's no box alleged to negate the 2017 resolution. But as we said in our brief in the trial court and here that, you know, this just admitted that it only passed the resolution after energy requested the debatement. May I finish? Yes, you may finish your statement. Go ahead. The district. Oh, thank you. The district admitted that it only passed the resolution only after and energy requested the abatement is entitled to the 2000 resolution. So I provide that the courts went beyond the bounds of what it was to consider when evaluating the complaint for tax objections and declaratory judgments. And doing so, the court failed to deem the well pleaded facts as true and failed to take all reasonable inferences in favor of energy. And we just like our day in court with the case, the orders of the trial court be reversed in this case where you're in. Thank you. Justice Jorgensen. I have no further questions. No. No, no. Thank you very much. All right. And I do not have any further questions either. So at this time we would like to very much thank counsel for your arguments this morning for your participation in this remote oral argument. The court will take the matter under advisement and render a decision in due course and the court stands adjourned for the day. Thank you again, counsel. We appreciate all the efforts that you have made. You may hang up now. Thank you. Thank you.